# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

| | |
|---|---|
| JAMES RAY JOHNSON, | : Case No. 3:18-cv-20 |
| Plaintiff, | : |
| vs. | : District Judge Walter H. Rice |
| | : Magistrate Judge Sharon L. Ovington |
| COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION, | : |
| Defendant. | : |

## REPORT AND RECOMMENDATIONS[1]

## I.   Introduction

Plaintiff James Ray Johnson applied for period of disability, Disability Insurance Benefits, and Supplemental Security Income in August 2014, asserting that he could no longer work primarily because of his mental health. He also had tremors in his hands and pain caused by sciatica. His claims were denied initially and upon reconsideration, and he filed a request for a hearing. Unfortunately, while waiting for his hearing, he developed deep vein thrombosis in his left leg—requiring surgery—and pulmonary embolisms. During his hospitalization, he had a heart attack.

A few months later Administrative Law Judge (ALJ) Gregory G. Kenyon conducted a hearing and ultimately concluded that Plaintiff was not eligible for benefits because he is not under a "disability" as defined in the Social Security Act.

---

[1] Attached is a NOTICE to the parties regarding objections to this Report and Recommendations.

The case is before the Court upon Plaintiff's Statement of Errors (Doc. #7), the Commissioner's Memorandum in Opposition (Doc. #10), Plaintiff's Reply (Doc. #11), and the administrative record (Doc. #6).

Plaintiff seeks a remand of this case for payment of benefits or, at a minimum, for further proceedings. The Commissioner asks the Court to affirm ALJ Kenyon's non-disability decision.

## II.  Background

Plaintiff asserts that he has been under a "disability" since December 2012. He was forty-four years old at that time and was therefore considered a "younger person" under Social Security Regulations. *See* 20 C.F.R. §§ 404.1563(c), 416.963(c). In 2018, he turned fifty years old and is thus a "person closely approaching advanced age." *See id.* §§ 404.1563(d), 416.963(d). He has a high school education. *See id.* §§ 404.1564(b)(4), 416.964(b)(4).[2]

### A.  Plaintiff's Testimony

Plaintiff testified at the hearing before ALJ Kenyon that he has an anxiety disorder. He has panic attacks almost every day that last up to fifteen minutes. (Doc. #6, *PageID* #78). During an attack, his heartrate increases, he has trouble catching his breath, he cannot concentrate, and he sometimes vomits. *Id.* at 78, 83. The thought of having to leave his apartment brings on an attack. *Id.* at 78. He only leaves to go to doctors' appointments. *Id.* at 79.

---

[2] The remaining citations will identify the pertinent Disability Insurance Benefits Regulations with full knowledge of the corresponding Supplemental Security Income Regulations.

2

Plaintiff also experiences social anxiety. *Id*. He explained, "I just don't know how to act around people. I drank since such a young age I never really learned to socialize." *Id*. He has some paranoia when he is out in public. *Id.* at 83. He feels like he is being watched. *Id.* at 84. Although he has a driver's license, he does not drive because of his anxiety. *Id.* at 73.

Plaintiff also has depression and experiences several symptoms. He has suicidal thoughts about every other week—"sometimes I don't feel like I want to be alive." *Id.* at 79-80. He also has trouble concentrating on things. For example, he cannot follow episodes on TV and has a difficult time keeping track of his medication. *Id.* at 80.

Plaintiff became sober in December 2012. *Id.* at 81. Since then, his depression and anxiety have increased: "I self-medicated my whole life and when I quit is when it really came out and hit me." *Id*.

Plaintiff testified that he has had tremors in his hands since December 2012. *Id.* at 74. He generally gets them when he is under stress—for example, when he is writing. *Id*. He takes medicine to help control them. *Id.* at 75.

He also has problems with his sciatic nerve. It causes sharp pain to shoot down his left leg if sits for an hour in any position. *Id.* at 85. It also sometimes happens if he twists and bends at the same time. *Id.* at 86.

In May 2016, Plaintiff had deep vein thrombosis and surgery on his left leg. *Id.* at 75. As a result, he cannot walk more than a block or stand more than one hour. *Id*. While in the hospital, doctors also found blood clots in his lungs and he had a heart attack. *Id.* at 76. Plaintiff noted that he needed another surgery (after the hearing) to

remove a stint. *Id.* at 75-76. He has not had any issues with clots since his hospitalization. *Id.* at 76. However, he gets short of breath if he has to climb stairs or walk a long distance. *Id.* He also has fatigue and chest pain when he has a deep cough. *Id.* at 77.

### B. Medical Opinions

#### i. Evelyn Mote, M.D.

Plaintiff's treating physician, Dr. Mote, completed a medical impairment questionnaire in June 2016. *Id.* at 1068-70. She diagnosed major depression, generalized anxiety disorder, intention tremor, CAD (coronary artery disease), pulmonary embolism, deep venous thrombosis in left leg, Factor V Leiden,[3] long-term anticoagulant therapy, hypothyroidism. *Id.* at 1068. Dr. Mote opined that Plaintiff could not stand for any period of time, sit for thirty minutes at a time, and work two hours per day. *Id.* He can lift ten pounds occasionally and five pounds frequently. *Id.* He is able to frequently raise his arms over shoulder level, occasionally bend, and never stoop, balance, or manipulate with either hand. *Id.* at 1068-69. Dr. Mote concluded that he cannot perform full-time work without missing more than two times per month or being off task more than fifteen percent of the workday because of his impairments, medical appointments, and treatment. *Id.* at 1069.

---

[3] "Factor V Leiden … is a mutation of one of the clotting factors in the blood. This mutation can increase your chance of developing abnormal blood clots, most commonly in your legs or lungs." *Factor V Leiden*, MAYO CLINIC, https://www.mayoclinic.org/diseases-conditions/factor-v-leiden/symptoms-causes/syc-20372423 (last visited Jan. 10, 2019).

4

### ii. Stephanie Ackner, M.D.

Dr. Ackner, Plaintiff's treating psychiatrist, completed a basic medical questionnaire in August 2015. *Id.* at 688-89. She diagnosed severe major depressive disorder, noting that his symptoms include "extreme low energy, motivation, poor appetite, excessive sleep, inability to bathe, care for ADLs and hopelessness." *Id.* at 688. He has non-specific suicidal thoughts. *Id.* He also suffers from severe anxiety and some paranoia, and he has trouble leaving his house for any reason. *Id.* She concluded, "[w]ith the severity of Mr. Johnson's symptoms he is unable to perform any meaningful part-time or full-time employment." *Id.* at 689.

## III. The ALJ's Decision

As noted previously, it fell to ALJ Kenyon to evaluate the evidence connected to Plaintiff's application for benefits. He did so by considering each of the five sequential steps set forth in the Social Security Regulations. *See* 20 C.F.R. § 404.1520. He reached the following main conclusions:

Step 1: Plaintiff has not engaged in substantial gainful employment since December 28, 2012.

Step 2: He has the severe impairments of a strain of the lumbar spine; a left shoulder strain; a history of alcohol abuse with tremors; depression; anxiety; a recent history of deep vein thrombosis; and residuals of myocardial infarction.

Step 3: He does not have an impairment or combination of impairments that meets or equals the severity of one in the Commissioner's Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1.

Step 4: His residual functional capacity, or the most he could do despite his impairments, *see Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002), consists of "sedentary work subject to the following

5

> limitations: (1) occasional crouching, crawling, kneeling, stooping, and climbing of ramps and stairs; (2) no climbing of ladders, ropes, and scaffolds; (3) no work around hazards such as unprotected heights or dangerous machinery; (4) frequent use of the hands for handling and fingering; (5) frequent overhead reaching with the left upper extremity; (6) limited to performing unskilled, simple, repetitive tasks; (7) occasional contact with co-workers and supervisors; (8) no public contact; (9) no teamwork or tandem tasks; (10) no fast-paced production work or jobs which involve strict production quotas; and (11) limited to performing jobs in a relatively static work environment in which there is very little, if any, change in the job duties or the work routine from one day to the next."

Step 4: He is unable to perform any of his past relevant work.

Step 5: He could perform a significant number of jobs that exist in the national economy.

(Doc. #6, *PageID* #s 40-51). These main findings led the ALJ to ultimately conclude that Plaintiff was not under a benefits-qualifying disability. *Id.* at 51.

## IV. <u>Standard of Review</u>

The Social Security Administration provides Disability Insurance Benefits and Supplemental Security Income to individuals who are under a "disability," among other eligibility requirements. *Bowen v. City of New York,* 476 U.S. 467, 470 (1986); *see* 42 U.S.C. §§ 423(a)(1), 1382(a). The term "disability"—as defined by the Social Security Act—has specialized meaning of limited scope. It encompasses "any medically determinable physical or mental impairment" that precludes an applicant from performing a significant paid job—i.e., "substantial gainful activity," in Social Security lexicon. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); *see Bowen,* 476 U.S. at 469-70.

Judicial review of an ALJ's non-disability decision proceeds along two lines: "whether the ALJ applied the correct legal standards and whether the findings of the ALJ

6

are supported by substantial evidence." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007). Review for substantial evidence is not driven by whether the Court agrees or disagrees with the ALJ's factual findings or by whether the administrative record contains evidence contrary to those factual findings. *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014); *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). Instead, the ALJ's factual findings are upheld if the substantial-evidence standard is met—that is, "if a 'reasonable mind might accept the relevant evidence as adequate to support a conclusion.'" *Blakley*, 581 F.3d at 407 (quoting *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance . . . ." *Rogers*, 486 F.3d at 241 (citations and internal quotation marks omitted); *see Gentry*, 741 F.3d at 722.

The other line of judicial inquiry—reviewing the correctness of the ALJ's legal criteria—may result in reversal even when the record contains substantial evidence supporting the ALJ's factual findings. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009); *see Bowen*, 478 F.3d at 746. "[E]ven if supported by substantial evidence, 'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting in part *Bowen*, 478 F.3d at 746, and citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546-47 (6th Cir. 2004)).

7

## V.     Discussion

Plaintiff contends that the ALJ failed to reasonably weigh the opinions of Plaintiff's treating physician, Dr. Mote, and Plaintiff's treating psychiatrist, Dr. Ackner. The Commissioner disagrees, maintaining that substantial evidence supports the ALJ's weighing of the opinion evidence.

Social Security Regulations require ALJs to adhere to certain standards when weighing medical opinions. "Key among these is that greater deference is generally given to the opinions of treating physicians than to those of non-treating physicians, commonly known as the treating physician rule." *Rogers,* 486 F.3d at 242 (citations omitted). The rule is straightforward:

> Treating-source opinions must be given "controlling weight" if two conditions are met: (1) the opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques"; and (2) the opinion "is not inconsistent with the other substantial evidence in [the] case record."

*Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013) (quoting in part 20 C.F.R. § 404.1527(c)(2)); *see Gentry*, 741 F.3d at 723.

If the treating physician's opinion is not controlling, "the ALJ, in determining how much weight is appropriate, must consider a host of factors, including the length, frequency, nature, and extent of the treatment relationship; the supportability and consistency of the physician's conclusions; the specialization of the physician; and any other relevant factors." *Rogers*, 486 F.3d at 242 (citing *Wilson*, 378 F.3d at 544).

The Regulations also require ALJs to provide "good reasons" for the weight placed upon a treating source's opinions. *Wilson*, 378 F.3d at 544. This mandatory

8

"good reasons" requirement is satisfied when the ALJ provides "specific reasons for the weight placed on a treating source's medical opinions." *Id*. (quoting Soc. Sec. R. 96-2p, 1996 WL 374188, at *5 (Soc. Sec. Admin. July 2, 1996)). The goal is to make clear to any subsequent reviewer the weight given and the reasons for that weight. *Id*. Substantial evidence must support the reasons provided by the ALJ. *Id*.

In the present case, ALJ Kenyon assigned "little" weight to the opinions of Plaintiff's treating physician, Dr. Mote. (Doc. #6, *PageID* #49). After summarizing a few of Dr. Mote's opined limitations, the ALJ concluded that Plaintiff was able to perform sedentary work and, although Plaintiff "has had some additional functional limitations as a result of the myocardial infarction[,] … there is no reason why he could sit for just 30 minutes at a time or why he could not walk at all, or why he could work for just two hours per day (Exhibits 8F, 9F, 11F, 12F, 16F, and 21F)." *Id.*

Noticeably absent from the ALJ's assessment was any deference to Dr. Mote as Plaintiff's treating physician. The ALJ very generally noted that he "considered opinion evidence in accordance with the requirements of 20 CFR 404.1527 and 416.927 and SSRs 96-2p, 96-5p, 96-6p and 06-3p." *Id.* at 45. But, the ALJ failed to discuss either condition of the treating physician rule or any of the factors. *See Gayheart*, 710 F.3d at 377 (citing *Wilson,* 378 F.3d at 544) ("The failure to provide 'good reasons' for not giving [a treating physician's] opinions controlling weight hinders a meaningful review of whether the ALJ properly applied the treating-physician rule that is at the heart of this regulation."). For instance, he did not recognize that Dr. Mote saw Plaintiff at least nine times between July 2014 and June 2016. 6 at 365-98, 534-74, 705-14, 1055-67; 20

9

C.F.R. § 404.1527(c)(2)(i) ("Generally, the longer a treating source has treated you and the more times you have been seen by a treating source, the more weight we will give to the source's medical opinion."). Further, Dr. Mote's treatment notes contain imaging results, test results, reports from specialists. 20 C.F.R. § 404.1527(c)(2)(ii) ("Generally, the more knowledge a treating source has about your impairment(s) the more weight we will give to the source's medical opinion. We will look at the treatment the source has provided and at the kinds and extent of examinations and testing the source has performed or ordered from specialists and independent laboratories."). The ALJ also did not acknowledge that Dr. Mote's opinion is the only opinion in the record that was given after Plaintiff's hospitalization.

Substantial evidence does not support the ALJ's single reason for discounting Dr. Mote's opinion. The ALJ cites six exhibits in support of his conclusion. Interestingly, the exhibits include a July 2015 letter from South Community Behavioral Healthcare (8F, 11F); Dr. Ackner's August 2015 opinion (9F, 12F); Dr. Ackner's January 2016 opinion/treatment notes (16F); and Dr. Mote's opinion (21F). This is puzzling because Plaintiff's psychiatrist, Dr. Ackner, opined Plaintiff was not able to work at all because of his severe mental health issues—an opinion shared by Dr. Mote. *Id.* at 689. Further, Dr. Ackner did not provide any opinion on Plaintiff's physical health. Thus, the exhibits cited by the ALJ do not support his conclusion that Plaintiff's physical impairments are not as severe as opined by Dr. Mote.

In addition, although the ALJ acknowledged Plaintiff's myocardial infarction, he overlooked important details. First, the ALJ ignored or overlooked the short period of

10

time—nineteen days—between Dr. Mote's opinion and Plaintiff's release from the hospital. Plaintiff's hospital stay began on May 22, 2016, when he presented to the hospital with leg and chest pain. The doctors diagnosed acute bilateral pulmonary embolisms and acute deep vein thrombosis of the left lower extremity. *Id.* at 828. The next day, he underwent thrombolysis on his left leg. *Id.* at 995. He unfortunately developed compartment syndrome and needed four-compartment fasciotomy. *Id.* at 866. At that time, the lateral fasciotomy wound could not be completely closed. *Id.* at 885. As he was recovering in the hospital, on May 29, 2016, Plaintiff unexpectedly went into cardiac arrest with ventricular fibrillation and underwent an emergency cardiac catherization. *Id.* at 867, 998. He remained in the hospital and on June 9, 2016, Plaintiff underwent complex closure of the fasciotomy-wound area—an area measuring twenty centimeters by eight centimeters. *Id.* at 885. The next day, Plaintiff was discharged from the hospital. *Id.* at 805.

Seven days after his release, on June 17, 2016, Plaintiff saw Dr. Mote. *Id.* at 1055. In her treatment notes, Dr. Mote indicated that Plaintiff had swelling and pain in his left leg and edema of his left foot. *Id.* at 1058. His lower left leg was dressed in gauze and he was using a walker. *Id.* Further, she noted that while at the hospital, they discovered he had Factor V Leiden mutation. *Id.* at 1057. Shortly thereafter, on June 29, 2016, Dr. Mote completed the medical impairment questionnaire. *Id.* at 1068. She reported that Plaintiff had leg pain following his surgery. She also noted that Plaintiff had a depressed mood, he was very anxious about his medical condition, and he has a long-standing essential "tremor that requires high doses of medication to control." *Id.* at 1070. The

11

ALJ also overlooked that Dr. Mote's opinion is supported by Plaintiff's hospital-discharging doctor. He noted, "With [Plaintiff's] medical issues this provider does not believe this patient could return to work, and may end up needing permanent disability due to his numerous medical issues of PE, DVT, heart attack and compartment syndrome of LLE. …" *Id.* at 808. Although the ALJ acknowledged the myocardial infarction, he failed to recognize Plaintiff's recent significant problems with his leg. Given Plaintiff's leg surgeries and the short time between Plaintiff's hospitalization and Dr. Mote's opinion, substantial evidence does not support the ALJ's conclusion that "there is no reason why" Plaintiff could not walk, sit for thirty minutes at a time, or work for more than two hours.

Not only did ALJ Kenyon ignore the treating physician rule, he ignored several significant portions of Dr. Mote's opinion. For instance, she opined Plaintiff could never stoop, balance, or manipulate with either hand. *Id.* at 1068. In contrast, the ALJ found that Plaintiff could occasionally stoop, had no balance limitations, and could frequently use his hands for handling and fingering. *Id.* at 45. The ALJ did not provide any reasons for rejecting Dr. Mote's opinions about those limitations.

In sum, ALJ Kenyon failed to provide good reasons, supported by substantial evidence, for assigning Dr. Mote's opinion little weight. "Because the reason-giving requirement exists to 'ensur[e] that each denied claimant receives fair process,' we have held that an ALJ's 'failure to follow the procedural requirement of identifying the reasons for discounting the opinions and for explaining precisely how those reasons affected the weight' given '*denotes a lack of substantial evidence,* even where the conclusion of the

ALJ may be justified based upon the record.'" *Blakley*, 581 F.3d at 407 (quoting *Rogers*, 486 F.3d at 243).

ALJ Kenyon also assigned little weight to the opinions of Plaintiff's treating psychiatrist, Dr. Ackner. Again, the ALJ failed to discuss either prong of the treating physician rule. *See* Soc. Sec. R. 96-2p, 1996 WL 374188, at *5 (Soc. Sec. Admin. July 2, 1996) ("[T]he notice of the determination or decision must contain specific reasons for the weight given to the treating source's medical opinion …."). He likewise failed to meaningfully consider the factors. *See Blakley*, 581 F.3d at 406 ("If the ALJ does not accord controlling weight to a treating physician, the ALJ must still determine how much weight is appropriate by considering a number of factors, including the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and any specialization of the treating physician.") (citing *Wilson,* 378 F.3d at 544; 20 C.F.R. § 404.1527(d)(2)). ALJ Kenyon acknowledged Dr. Ackner was a psychiatrist—a specialist—but he does not explain how this factor affected the weight he assigned, if at all. *See* 20 C.F.R. § 404.1527(c)(5) ("We generally give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist.").

However, he did provide some reasons for the weight he assigned. He found that two of Dr. Ackner's opinions failed to address the issue of functional limitations and her third opinion did not address specific work-related functions. (Doc. #6, *PageID* #49). These do not constitute good reason for assigning little weight to her opinions.

13

The Social Security Administration defines medical opinions as "statements from … acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite your impairment(s), and your physical or mental restrictions." 20 C.F.R. § 404.1527(a)(2). Given this definition, a physician's statements need not describe "functional limitations" or "specific work-related functions" to constitute a medical opinion. Dr. Ackner's opinions constitute "medical opinions" under the Administration's definition. Her responses reflect a number of judgments about the nature and severity of Plaintiff's impairments. For example, Dr. Ackner not only recounts Plaintiff's symptoms, she describes their intensity and impact. *See* Doc. #6, *PageID* #688 ("[He] has severe major Depressive Disorder – he suffers from extreme low energy, motivation, poor appetite, excessive sleep, inability to bathe, care for ADLs and hopelessness. … He has severe anxiety – trouble leaving house for any reason, he doesn't drive or go shopping for necessities."). She opines that his health status is deteriorating. *Id.* And, she concludes, based on the severity of Plaintiff's symptoms, he is not able to work. *Id.* at 689. The ALJ's conclusory rejection of Dr. Ackner's medical opinions based on their lack of functional limitations and work-related limitations does not constitute a good reason for assigning her opinions little weight.

ALJ Kenyon provided one additional reason. He correctly observed that Dr. Ackner's opinion that Plaintiff is unable to work part time or full time is an opinion on an issue which is reserved to the Commissioner. (Doc. #6, *PageID* #49). Accordingly, it cannot be given controlling weight. *Gentry*, 741 F.3d at 727 ("A doctor's conclusion

14

that a patient is disabled from all work … could 'never be entitled to controlling weight or given special significance' because it may invade the ultimate disability issue reserved to the Commissioner.) (quoting Soc. Sec. R. 96-5p, 1996 WL 374183, at *5 (Soc. Sec. Admin. 1996)[4]). However, "opinions from any medical source on issues reserved to the Commissioner must never be ignored." Soc. Sec. R. 96-5p, 1996 WL 374183, at *6. The ALJ must instead "evaluate all the evidence in the case record to determine the extent to which the opinion is supported by the record." *Id.* at *6-7. There is no indication in the ALJ's decision that he considered whether Dr. Ackner's opinion on issue reserved to the Commissioner was supported by the record.

Accordingly, for the above reasons, Plaintiff's Statement of Errors is well taken.[5]

## VI. **Remand**

A remand is appropriate when the ALJ's decision is unsupported by substantial evidence or when the ALJ failed to follow the Administration's own regulations and that shortcoming prejudiced the plaintiff on the merits or deprived the plaintiff of a substantial right. *Bowen*, 478 F.3d at 746. Remand may be warranted when the ALJ failed to provide "good reasons" for rejecting a treating medical source's opinions, *see Wilson*, 378 F.3d at 545-47; failed to consider certain evidence, such as a treating source's opinions, *see Bowen*, 478 F.3d at 747-50; failed to consider the combined effect of the plaintiff's impairments, *see Gentry*, 741 F.3d at 725-26; or failed to provide specific

---

[4] The Social Security Administration rescinded Soc. Sec. R. 96-5p, effective March 27, 2017. At the time of the ALJ's decision in this case, Soc. Sec. R. 96-5p was still in effect.

[5] In light of the above discussion, and the resulting need to remand this case, an in-depth analysis of Plaintiff's other challenges to the ALJ's decision is unwarranted.

15

reasons supported by substantial evidence for finding the plaintiff lacks credibility, *see Rogers*, 486 F.3d at 249.

Under sentence four of 42 U.S.C. § 405(g), the Court has authority to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for rehearing." *Melkonyan v. Sullivan*, 501 U.S. 89, 99 (1991). Consequently, a remand under sentence four may result in the need for further proceedings or an immediate award of benefits. *E.g., Blakley*, 581 F.3d at 410; *Felisky v. Bowen*, 35 F.3d 1027, 1041 (6th Cir. 1994). The latter is warranted where the evidence of disability is overwhelming or where the evidence of disability is strong while contrary evidence is lacking. *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994).

A judicial award of benefits is unwarranted in the present case because the evidence of disability is not overwhelming and the evidence of disability is not strong while contrary evidence is lacking. However, Plaintiff is entitled to an Order remanding this case to the Social Security Administration pursuant to sentence four of § 405(g) due to the problems discussed above. On remand, the ALJ should be directed to evaluate the evidence of record, including the medical source opinions, under the applicable legal criteria mandated by the Commissioner's Regulations and Rulings and by case law; and to evaluate Plaintiff's disability claim under the required five-step sequential analysis to determine anew whether Plaintiff was under a disability and whether his applications for Disability Insurance Benefits and Supplemental Security Income should be granted.

**IT IS THEREFORE RECOMMENDED THAT**:

1. The Commissioner's non-disability finding be vacated;

2. No finding be made as to whether Plaintiff James Ray Johnson was under a "disability" within the meaning of the Social Security Act;

3. This matter be **REMANDED** to the Social Security Administration under sentence four of 42 U.S.C. § 405(g) for further consideration consistent with this Report and Recommendations, and any decision adopting this Report and Recommendations; and

4. The case be terminated on the Court's docket.

April 8, 2019

*s/Sharon L. Ovington*
Sharon L. Ovington
United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **FOURTEEN** days after being served with this Report and Recommendations. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within **FOURTEEN** days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981).